MARK W. GOLDBERG ET AL. *v.* INSURANCE DEPARTMENT ET AL.
(4618)

HULL, BORDEN and DALY, Js.

*(One judge dissenting)*
Argued November 12, 1986—decision released February 10, 1987

*Jonathan L. Ensign,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellants (defendants).

*Gerald L. Garlick,* for the appellees (plaintiffs).

DALY, J. The defendants[1] appeal from the trial court's decision sustaining the plaintiffs'[2] administrative appeal from a decision of the defendant Peter W. Gillies, insurance commissioner. The commissioner suspended the insurance licenses issued by the defendant insurance department to the plaintiffs and imposed fines on the plaintiffs for unlawfully conducting insurance business in violation of General Statutes §§ 38-60[3] and 38-264,[4] and for engaging in business with an insurance company not authorized to do business in Connecticut in violation of General Statutes § 38-70.[5]

---

[1] Both the insurance department and Peter W. Gillies, insurance commissioner, are defendants in this appeal.

[2] The second plaintiff, Conceptional Services, Inc., formerly known as Options Services, Inc., joins in this appeal.

[3] General Statutes § 38-60 provides in pertinent part: "No person shall engage in this state in any trade practice which is . . . an unfair method of competition or an unfair or deceptive act or practice in the business of insurance . . . . The commissioner shall have power to examine the affairs of every person engaged in the business of insurance in this state in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by sections 38-60 to 38-64, inclusive."

[4] General Statutes § 38-264 provides in pertinent part: "No person or insurer shall directly or indirectly do any of the acts of an insurance business set forth in subsection (a) of section 38-263 except as authorized by the general statutes. In respect to the insurance of subjects resident, located or to be performed within this state this section shall not prohibit the collection of premium or other acts performed outside of this state by persons or insurers authorized to do business in this state, provided such transactions and insurance contracts are otherwise lawful."

[5] General Statutes § 38-70 provides: "No person shall, within this state, solicit or procure insurance, except with regard to his own property or per-

The sole issue on appeal is whether the trial court erred in finding that the defendants had not adopted written rules of procedure governing hearings as required by § 4-167 (a) (2)[6] of the Uniform Administrative Procedures Act (UAPA).[7] We find no error.

Administrative proceedings against the plaintiffs were commenced by service of an amended notice of hearing. The first paragraph of the notice informed the plaintiffs that "[t]he hearing will be conducted in accordance with the procedures set forth in the UAPA (Chapter 54, C.G.S.)." After a hearing, the plaintiffs were found in violation of various sections of the General Statutes. The insurance commissioner accepted and adopted the hearing officer's findings of fact and conclusions of law. Thereafter, the plaintiffs were fined $4100 and their insurance licenses were suspended for three months.

The plaintiffs appealed to the Superior Court on four grounds. The court held that because the defendant insurance department failed to adopt as a regulation written rules of procedure governing its hearings as

son, with or by any insurance company which does not hold a certificate then in force from the commissioner authorizing such insurance company to do such insurance business in this state, or deliver policies or collect premiums of or for any such company; nor shall any person aid in any way in the transaction in this state of any insurance business with or by any insurance company not thus authorized, except to obtain insurance upon his own property or person. Any person who aids any corporation, association or person not authorized to do insurance business in this state in soliciting such business from residents of this state, by means of any advertisement published in this state or by any other means, shall be fined not more than one hundred dollars or imprisoned not more than six months or both."

[6] General Statutes § 4-167 (a) provides in pertinent part: "In addition to other regulation-making requirements imposed by law, each agency shall: . . . (2) adopt as a regulation rules of practice setting forth the nature and requirements of all formal and informal procedures available provided such rules shall be in conformance with the provisions of this chapter . . . ."

[7] General Statutes §§ 4-166 through 4-189 is the Uniform Administrative Procedures Act.

required by § 4-167 (a) (2), it was "without authority to take administrative action on their charges against the plaintiffs." The trial court sustained the appeal on this ground alone and deemed it unnecessary to reach the other claimed errors. This appeal by the defendants followed.

A "regulation" is statutorily defined as an "agency statement of general applicability, without regard to its designation, that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency." General Statutes § 4-166 (7). The defendants maintain that § 38-4-8 of its regulations, which was in effect at the time of the hearing, was a regulation providing adequate "rules of practice setting forth the nature and requirements of all formal and informal procedures available" as required by General Statutes § 4-167 (a) (2).[8] The Regulations of Connecticut State Agencies § 38-4-8, at the time of the hearing, provided: "All hearings conducted in the insurance department are conducted in accordance with the requirements of and procedures suggested in Public Act 854 of the 1971 session of the General Assembly, Sections 12 through 17 inclusive, as the same may be amended from time to time. Conferences, interviews and formal hearings conducted or held as a part of the administrative processes of the insurance department are *conducted on an informal basis, in accordance with standards designed to meet the purposes to be accomplished by the proceeding."* (Emphasis added.) Regs., Conn. State Agencies § 38-4-8. "Whether administrative action is a regulation does not depend on the label the agency attaches to it or on the procedure giving rise to it . . . . 'The test is, rather, whether "a rule has a substantial impact on the rights and obligations of parties who may appear before the agency in the future." ' "

---

[8] See footnote 6, supra.

(Citation omitted.) *Eagle Hill Corporation* v. *Commission on Hospitals & Health Care,* 2 Conn. App. 68, 76, 477 A.2d 660 (1984). When a rule passed by an agency has this impact it must comply with the notice and hearing requirements of the UAPA. *Cheshire Convalescent Center* v. *Commission on Hospitals & Health Care,* 34 Conn. Sup. 225, 239, 386 A.2d 264 (1977). Thus, the pivotal issue is whether the rule passed by the insurance department in this case had a "substantial impact on the rights and obligations" of parties appearing before the insurance commissioner. The test to be applied in determining whether an administrative action was in fact a regulation, is to examine what the agency actually did in a particular case and how it did it. Id.; see also *Salmon Brook Convalescent Home* v. *Commission on Hospitals & Health Care,* 177 Conn. 356, 362, 417 A.2d 358 (1979).

An administrative agency can act only within the bounds of authority granted to it by its enabling statute and within constitutional limitations. It is wholly without power to modify, dilute or change in any way the statutory provisions from which it derives its authority *unless* the state clearly and expressly grants it that power. *Waterbury* v. *Commission on Human Rights & Opportunities,* 160 Conn. 226, 230, 278 A.2d 771 (1971). Although an administrative agency has the statutory power, indeed the obligation, to promulgate rules and regulations, it does not make law. Its rulemaking power extends only to the point of effecting the legislative will as expressed by statute. The UAPA provides uniform rules which guide agencies in the proper execution of their delegated duties. *Salmon Brook Convalescent Home* v. *Commission on Hospitals & Health Care,* supra, 363.

This principle is grounded in common sense and simple concepts of fairness. " 'The objective is . . . the promulgation . . . of a code governing action and con-

duct in the particular field of regulation so those con-
cerned may know in advance all the rules of the game,
so to speak, and may act with reasonable assur-
ance. . . . Persons subject to regulation are entitled
to something more than a general declaration of statu-
tory purpose to guide their conduct before they are
restricted or penalized by an agency for what it then
decides was wrong from its hindsight conception of
what the public interest requires in the particular sit-
uation.' " *Adams* v. *Professional Practices Commission,*
524 P.2d 932, 934 (Okla. 1974).

The defendants assert that since § 38-4-8 of its regu-
lations specifically referred to Public Acts 1971, No.
854, §§ 12 through 17, the department had stated the
"rules of the game." Those sections, now §§ 4-177 to
4-182 of the UAPA, encompass rules relating to notice,
evidence, the record, conduct of officials and agency
members, and license hearings. The defendants argue
that the procedures set forth in the UAPA are suffi-
ciently clear to inform parties appearing before the
department of the "rules of the game." Yet, reason
dictates otherwise, for "if the legislature had consid-
ered that to be true, it would not have provided in the
act for the adoption and filing of rules of procedure."
*Monahan* v. *Board of Trustees,* 486 P.2d 235, 239 (Wyo.
1971).

The defendants' reliance on *Cope* v. *Board of Edu-
cation,* 4 Conn. App. 464, 465, 495 A.2d 718 (1985),
is misplaced. *Cope* is distinguishable from the present
case because it involved action by a board of education.
Boards of education are specifically excluded from the
statutory definition of "agency"[9] and are thus exempt
from the regulation requirements of the UAPA.

---

[9] General Statutes § 4-166 provides in pertinent part: "(1) 'Agency' means
each state board commission, department or officer, *other than* . . .
regional boards of education . . . ." (Emphasis added.)

The second sentence of § 38-4-8, that the hearings would be "conducted on an informal basis, in accordance with standards designed to meet the purposes to be accomplished by the proceeding," is fatally vague and uncertain. The trial court was correct in concluding that the section was invalid on the ground that it was an unlawful regulation not promulgated in accordance with the rulemaking provision of the UAPA.

There is no error.

In this opinion, HULL, J., concurred.

BORDEN, J., dissenting. The majority misstates the issue in this appeal. The pivotal issue is not, as the majority argues, whether the Regulations of Connecticut State Agencies § 38-4-8 had a substantial impact on the parties. The cases on which the majority relies; *Salmon Brook Convalescent Home* v. *Commission on Hospitals & Health Care,* 177 Conn. 356, 417 A.2d 358 (1979); *Eagle Hill Corporation* v. *Commission on Hospitals & Health Care,* 2 Conn. App. 68, 477 A. 2d 660 (1984); and *Cheshire Convalescent Center* v. *Commission on Hospitals & Health Care,* 34 Conn. Sup. 225, 386 A.2d 264 (1977); involved the question of whether particular decisions, rules or policies which the administrative agency did not present as regulations were in fact regulations because they had a substantial impact on the rights and obligations of parties in the future. In this case, the defendant agency labeled its action a regulation, and there is no question that § 38-4-8 was meant to have general applicability beyond this particular case. Nor is there any question that it was adopted pursuant to proper procedures, and that it was applied in this case.

The pivotal issue is, therefore, whether § 38-4-8, which simply incorporated by reference the requirements and procedures of the UAPA, sufficiently com-

plied with the mandate of the UAPA requiring that the defendant "adopt as a regulation rules of practice setting forth the nature and requirements of all formal and informal procedures available provided such rules shall be in conformance with the provisions of" the UAPA. General Statutes § 4-167 (a) (2). I would hold that it does.

It is true that the drafting of § 38-4-8 displays a discomforting laziness in the attempt to comply with General Statutes § 4-167 (a) (2).[1] Nonetheless, in my view it sufficiently complied with that statute.

The Regulations of Connecticut State Agencies § 38-4-8 at the time of the hearing provided in pertinent part that "[a]ll hearings conducted in the insurance department are conducted in accordance with the requirements of and procedures suggested in Public Act 854 of the 1971 Session of the General Assembly, Sections 12 through 17, inclusive, as the same may be amended from time to time." Public Acts 1971, No. 854, §§ 12 through 17 are the contested hearing provisions of the UAPA, including the special provisions concerning licenses. They are now General Statutes §§ 4-177 through 4-182. Thus, the regulation in question incorporated by reference the statutory provisions of the UAPA.

Those statutory provisions are quite clear and very detailed. They provide for detailed notice, the opportunity to present evidence and argument, informal dispositions, a definition of the record, transcription of the proceedings, and findings of facts based solely on the evidence and on matters officially noted. General Statutes § 4-177. They also provide for rules of evidence; General Statutes § 4-178; a procedure for a pro-

---

[1] Subsequent to the administrative hearing in this case the insurance commissioner promulgated more detailed and comprehensive regulations to replace § 38-4-8. See Regs., Conn. State Agencies §§ 38-4-6 through 38-4-74.

posed decision; General Statutes § 4-179; and time and form limitation on final decisions. General Statutes § 4-180. They bar certain ex parte communications. General Statutes § 4-181. Finally, they make special, even more detailed and stringent provisions applicable to licensure matters including, as in this case, matters involving the suspension of licenses. General Statutes 4-182.

The plaintiffs do not claim that those statutory provisions were not followed. Indeed, the record makes clear that they were scrupulously applied and that all applicable procedural protections were provided. Nor can I discern in this record any prejudice to the plaintiffs flowing from the fact that the procedures mandated by the UAPA were incorporated by reference into the defendants' regulation.

The majority's reliance on *Monahan v. Board of Trustees,* 486 P.2d 235 (Wyo. 1971), is misplaced. In that case, the administrative agency had not adopted *any* regulation governing its procedures, either by reference to the state's administrative procedure act or otherwise. In the absence of governing procedures, the agency proceeded to violate fundamental fairness by appointing its own attorney as the hearing officer who, in turn, acted as both prosecutor and hearing officer, interrogated and cross-examined witnesses, ruled on his own and opposing counsel's objections, sat with the agency as it made its decision, and made public statements to the audience at the hearing as to why the hearing was even necessary. Id., 238.

Nor am I persuaded by the argument of the majority as to the fatal vagueness of the second sentence of the Regulations of Connecticut State Agencies § 38-4-8. I would agree that this inartfully drafted language leaves much to be desired. To the extent that it may be vague, however, that is not an issue in this case. It is clear

from the record that, despite the statement in the regulation that insurance department hearings "are conducted on an informal basis, in accordance with standards designed to meet the purposes to be accomplished by the proceeding"; Regs., Conn. State Agencies § 38-4-8; this proceeding was held with the utmost administrative formality.

There was a detailed notice of the hearing, which stated the charges to be heard. The hearing was held over three days. Counsel were permitted opening remarks. There was an orderly presentation of evidence, both oral and documentary, from both sides. Full opportunity to examine and cross-examine all witnesses was provided, as well as the opportunity to object to testimony and exhibits. Counsel were permitted final oral arguments and filed extensive briefs. The majority ignores the fundamental principle that a vagueness challenge to a statute or regulation must be viewed, not on the face of the language in question, but as it applies to the facts of the case. *Jack* v. *Scanlon,* 4 Conn. App. 451, 456–57, 495 A.2d 1084, cert. dismissed, 197 Conn. 808, 499 A.2d 59 (1985).

I therefore dissent.

